# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

United States of America,         )
Plaintiff,                  )
v.                          )
                            )    Criminal No. 02-30131-GPM
BRIAN HINES              )
Defendant.           )

---

## <u>AFFIDAVIT OF CARYN PLATT TATELLI, AM, LCSW</u>

I, Caryn Platt Tatelli, after being duly sworn state the following under oath, **TO WIT:**

1. I am a forensic social worker. I am a Licensed Clinical Social Worker with a private practice just north of Chicago, Illinois. I have been in private practice since September of 1995. I have provided field placement supervision to a master's level social work student and have provided internships for undergraduate students interested in working in a forensic setting since 1996.

2. I received my Bachelor's of Arts degree from Grinnell College, in Grinnell, Iowa, in May of 1992. I majored in sociology and earned a secondary education certification and licensure in the state of Iowa. I received my Master's of Arts degree from the University of Chicago's School of Social Service Administration in June of 1994.

3. Prior to developing a private practice, I was employed at the Illinois Capital Resource Center as a Mitigation Specialist. I worked at the resource center from April, 1994 until January,

Case 4:04-cv-08003-GAF    Document 11-2    Filed 12/07/04    Page 1 of 9

1996. While I was employed at the resource center, I conducted extensive social history investigations, prepared social history reports and assisted attorneys with the development of post-conviction petitions. My experience in forensic social work prior to working at the resource center was in the form of a field placement. During the course of my graduate work, I received my initial training in mitigation work under the supervision of Dr. George Savarese, LCSW, who was my field placement supervisor. Since 1993, I have worked on approximately eighty-five capital murder cases. This figure includes those cases on which I am currently working, and is a combination of state and federal cases at the trial, post-conviction, and clemency stages.

4. While I was employed at the Illinois Capital Resource Center, I attended several training sessions, including two annual death penalty conferences of the National Legal Aid and Defender Association [NLADA]. At one of these conferences, I attended a special, one-day session entitled "Mitigation Specialists Training." In June of 1995, I was a member of a panel presentation at the Office of the State Appellate Defender Annual Death Defense Seminar.

5. Since beginning my private practice, I have regularly sought opportunities for continuing education. In August of 1997, I attended the Door County Summer Institute session entitled "Forensic Issues in Mental Health." In June of 1998, I attended a workshop entitled "Advanced Sexual Offender Profiling: Behavioral Analysis of Violent Crime Scenes," which was presented by Roy Hazelwood, a retired FBI profiler. In March of 1999, I attended the annual NLADA death penalty training entitled "Life in the Balance." I also attended the training sponsored by the Federal Death Penalty Resource Counsel Project in conjunction with the NLADA session. In April of 1999, I attended a conference entitled "Male Survivors of Sexual Assault." In July of

2

Case 4:04-cv-08003-GAF    Document 11-2    Filed 12/07/04    Page 2 of 9

1999, I attended a conference entitled "Assessment and Management of the Violent Individual." In January of 2000, I attended two conferences – one on Victim Outreach and one on Forensic Assessments and Evaluations, "Violence, Aggression and Risk: Clinical and Legal Issues." In March of 2001, I attended the annual NLADA death penalty training entitled "Life in the Balance." I attended "Lessons from Littleton -- Leveling; A Guide to Positive Parenting" in April of 2001. In June of 2001, I attended a conference entitled "Defense Based Victim Outreach." Most recently, in November of 2001, I attended a conference about working with victims: "The Restitution Model: Systematic Coordination of Services Between Victims and Offenders."

6.     Since I established my private practice, I have regularly been asked to present at various conferences and training seminars. In August of 1999, I presented a workshop entitled "Working with Difficult Clients" at the Cook County Public Defenders Office annual capital training. In April of 2000, I presented a workshop entitled "Establishing Rapport and Effective Interviewing Techniques" at the Indiana Public Defender Council death penalty conference. In June of 2002, I presented an overview of the process and development of mitigation at an attorney accreditation conference sponsored by the Illinois Capital Litigation Division and DePaul University. And, in August of 2002, I presented two sections at another state of Illinois attorney accreditation conference -- Working with the Expert Witness and Preparation of Testifying Witnesses.

7.     The role of the mitigation specialist in a capital murder case is to conduct a detailed biopsychosocial evaluation of the defendant's life history. The purpose of the evaluation is multifaceted. It is crucial to understand which issues or factors in a client's life impacted the

3

Case 4:04-cv-08003-GAF     Document 11-2     Filed 12/07/04     Page 3 of 9

client, and how the issues or factors affected that client. It is also crucial to determine which issues or factors in the client's life require additional expert examination. The mitigation specialist is responsible for gathering whatever records or other materials may be needed by such an expert to conduct a thorough examination. The mitigation specialist is responsible for communicating with the attorneys so that they are aware of the result of the investigation, and so that a consistent theory of defense can be developed for the case. The mitigation specialist is also responsible for working with the client and his or her family. Lastly, the mitigation specialist aids in the development of a theory of presentation of the developmental life history information. The mitigation specialist may or may not be a mitigation witness during the sentencing phase.

8.    The development of the aforementioned biopsychosocial life history is accomplished through a careful and often circular evaluation and investigation of the client and his or her developmental life experiences. The mitigation specialist must obtain all available records pertaining to the client. These records include, but, are not limited to: birth, vital records, medical, psychiatric, educational, vocational, employment, social service, media, juvenile, military, and institutional (correctional system or other). Because of the need to understand generational family patterns, these records must be gathered for family members as well as for the defendant.

9.    The above listed records should be augmented by memorabilia which pertains directly to the client and his or her family and their accomplishments or memories. Examples of these types of materials include, but are not limited to, family photos, drawings, art work, funeral programs, awards, yearbooks, newspaper clippings, certificates, or trophies.

4

Case 4:04-cv-08003-GAF    Document 11-2    Filed 12/07/04    Page 4 of 9

10. Source interviews with individuals who are central figures in the client's life, or who were a part of the client's life at some earlier point in time, should be interviewed. These source witnesses add anecdotal information and impressions which further augment the records obtained. Interviews with such witnesses may also suggest other records which should be requested. The types of individuals who should be interviewed include, but are not limited to: both natural parents, any other person who is viewed by the client as a parent, siblings, spouses or significant others, children, other relatives, friends, co-workers, and neighbors. In addition to these sources, professionals who have had contact with the client should also be interviewed. These people would include, but not be limited to: teachers, counselors, jail or prison guards, doctors, coaches, employers, and clergy.

11. The client is integral in the process of developing mitigation, and must be interviewed extensively. The client is one of the original sources for the aforementioned records and sources, and must be interviewed about his entire developmental life experience. This interview usually begins with a study of what the client knows about his family before his birth (i.e. -- prior generational material) and moves forward through the client's life up to and including his or her arrest. The client will be asked to provide both factual and emotional content materials, such as information about his or her birth and the birth of his or her siblings, and his or her feelings about those events. The types of information solicited includes, but is not limited to: the composition of the client's family; a complete medical history; psychiatric data pertaining to the client and any and all family members; a complete educational assessment including a review of any and all records and an evaluation of the client's and his or her family's level of education; the client's

5

Case 4:04-cv-08003-GAF    Document 11-2    Filed 12/07/04    Page 5 of 9

employment history and employment patterns within the client's family; discipline patterns both within the client's family and a study of patterns established in earlier generations; friendships and participation in peer groups of any kind; hobbies and extracurricular activities; criminal histories and correctional records of all family members, including the juvenile record of the client; substance use or abuse and treatment both for the client and for any and all family members with identified issues; and coping and communication methods and patterns within the family.

12. Once the mitigation specialist gathers preliminary information, it is the job of that person to identify other experts who would be useful in understanding the defendant. The types of experts vary and range widely, and the choice as to which type of expert to employ is largely dependent upon the client's developmental life experiences. Some types of experts might include, but not be limited to: psychiatrist, psychologist, special education specialist or remediation therapist, neurologist, genealogist, bereavement counselor, medical doctor, and/or an expert in future dangerousness.

13. The final product from the above detailed biopsychosocial investigation varies greatly, depending upon the case and the needs of the attorney. One final product is a mitigation report. This type of report synthesizes all of the information gathered during the investigation process, and relies heavily upon source interviews and documents to describe the client's developmental life experiences. The report also considers those risk factors (issues known to have a strong correlation to poor coping behaviors or criminality) which were present in the client's developmental life experience and, using currently accepted psychiatric, psychological, and

6

sociological theory and standards of practice within the field of clinical social work, the report describes the ways in which those risk factors impacted the client and his or her ability to cope and make decisions which fall within the commonly accepted societal norms of behavior. This aspect of the report utilizes current research to document and support the findings. Another type of final product is a timeline, where the client's records and anecdotal information from source witnesses is compiled and analyzed according to the time frame in which specific events occurred. Timelines may cover the defendant's entire life history or may focus on the development and prevalence of one specific issue throughout his or her life, such as the occurrence of a significant head injury and ways in which that head injury impaired the client. Timelines can be strictly factual, or can be augmented with information from current research, in much the same way that mitigation reports are augmented. Summaries of source witness interviews are often prepared, either as part of the process of preparing a mitigation report or timeline, or in order to help the attorney prepare for direct examination of source witnesses. Sentencing memorandums or outlines, which include abstracted data from summaries and a framework of the client's life can be useful when considering which witnesses to call and in what order they will be called.

14.     In cases where source witnesses are articulate and comfortable in speaking about the client's and family's developmental life history, it is possible, and sometimes preferable, to present the mitigation evidence through live source witnesses -- augmented by records -- instead of through the use of a mitigation report, timeline, or any other type of final product.

Case 4:04-cv-08003-GAF     Document 11-2     Filed 12/07/04     Page 7 of 9

15. In some cases, it is also appropriate for the mitigation specialist to work with the victim's family. The mitigation specialist can help the victim's family consider what role they might want to play in the criminal prosecution process. It is important for the mitigation specialist to understand how the victim and his or her family felt and feels about the death penalty. It may be appropriate to consider a plea in cases where the victim did not believe in the death penalty, or where the victim's family does not believe in the death penalty. Where it is not appropriate for the mitigation specialist to make such an approach, the mitigation specialist may be able to identify and prepare other individuals to reach out to the victim's family.

16. The process of conducting a mitigation investigation is time consuming, and can be somewhat circular in that the act of acquiring one record or interviewing one source may lead to the need to acquire many more records or to interview many more sources. The process of gathering and developing mitigation material should be begun as early as possible in the process of preparing for a capital trial. It is difficult to predict how much time a given case will take until the initial investigation has been completed, as the age of the defendant and his or her life history directly impacts that which needs to be done.

17. Attorneys sometimes attempt to prepare mitigation reports or to conduct mitigation investigations themselves. This attempt often leaves them unable to adequately focus on and prepare for trial. The skills of an attorney are necessarily different from the skills of a social worker. Because of the extensive amount of work involved, and the issues which need to be considered, mitigation specialists are usually hired to conduct the mitigation investigation in a death penalty case. The type of information which must be elicited in a social history

8

investigation is often extremely personal and very sensitive in the eyes of the defendant. A trained clinician, knowledgeable in the areas of bonding with a client, skilled in the area of working with resistance, and practiced in the area of conducting an assessment as much on the basis of what is said as what is not said is generally far better equipped to handle a mitigation investigation than are attorneys, who have very different skills, and who often have different relationships with their clients than the mitigation specialists do.

18.     Due to the special skills possessed by each member of the defense team -- the attorneys, the investigator, the mitigation specialist, and the client -- it is important that the mitigation specialist be appointed early. If the mitigation specialist is appointed early in the process, that individual can begin working with the team immediately, so as to develop a strong defense team and so as to provide for an opportunity to utilize any information gathered by the mitigation specialist as completely as possible.

Further affiant sayeth not.

_____
Caryn Platt Tatelli, AM, LCSW

SWORN to and SUBSCRIBED in my presence
this 7th day of June, 2003.

"OFFICIAL SEAL"
ANA MARQUEZ
Notary Public, State of Illinois
My Commission Exp. 03/02/2004

_____
Notary Public

9