# Declaration of Daniel J. Grothaus

DANIEL J. GROTHAUS, under penalty of perjury, declares the following to be true:

1.      I am a private investigator. My office address is 305 E 63rd St., Kansas City, Mo. I am a licensed private investigator in the State of Kansas: License # D-236. Approximately 95 percent of my work is devoted to defense investigation in criminal cases, including capital cases. I have been doing defense investigation in capital cases for 19 years, or, since 1988. I do not speak Spanish. I have no specialized training in Latin American culture. I have no specialized training or expertise in mental disorders or impairments. I have no specialized training or expertise in environmental toxins. I have never claimed to be qualified by training or experience to screen for mental disorders or impairments. I have not personally conducted a capital defense investigation of any kind in a foreign country.

2.      In March of 1999, I was retained by German Sinisterra's trial lawyers, Fred Duchardt and Jennifer Herndon, as the investigator in his federal capital case. I spent more than 300 hours over the course of 12 months, working on Mr. Sinisterra's case. As far as I know, I was the only investigator on Mr. Sinisterra's trial team. This was a complex federal capital case with a number of co-defendants. Mr. Sinisterra's lawyers provided direction on my investigation priorities. I did not travel out of state or otherwise incur significant costs without direction from the lawyers.

3.      I recall spending the vast majority of my time on this case investigating issues

10/18/2007 THU 12:30 [TX/RX NO 5074] @001

Case 4:04-cv-08003-GAF      Document 68-2      Filed 10/31/07      Page 1 of 4

related to Mr. Sinisterra's guilt-innocence phase. Specifically, I remember that a good deal of my time was dedicated to identifying and locating associates of the victims, as well as associates of Edwin Hinestroza, the ringleader of the alleged drug enterprise that was the basis for Mr. Sinisterra's capital prosecution. A considerable amount of time and effort was also spent trying to locate Monica Osma, the wife of Edwin Hinestroza. I traveled to Houston, Texas a number of times to locate and eventually interview Ms. Osma as well as other witnesses who were acquainted with Mr. Hinestroza's operation. I also traveled to New Jersey and North Carolina, in seeking interviews with these associates/witnesses.

4. My understanding was that Jennifer Herndon was the attorney in charge of the penalty phase of Mr. Sinisterra's trial and she undertook nearly all the penalty phase investigation herself. Ms. Herndon did ask me to interview some witnesses in Houston who knew Mr. Sinisterra during his time there. These were friends and family members. Some of my conversations with those witnesses were relevant to Mr. Sinisterra's penalty phase. For example, I remember interviewing Mr. Sinisterra's wife, Michelle Sinisterra, Vivian Dumas, Barb Dillingham, Christie Barrs and others. These witnesses provided me with information related to Mr. Sinisterra's guilt-innocence phase.

5. These witnesses also provided a sense of Mr. Sinisterra's life as a husband and father. Mr. Sinisterra took care of his daughter by another woman, and the daughter born to his wife Michelle. All of these witnesses were relevant to Mr. Sinisterra's penalty phase. His wife, Michelle, told me that Mr. Sinisterra was a good husband and father

Case 4:04-cv-08003-GAF    Document 68-2    Filed 10/31/07    Page 2 of 4

who was very attentive to her and the children. I corroborated most of her claims through interviews with these other friends and family members and school personnel at a private school attended by the two girls.

6.    I do not recall doing any other investigation that would have been relevant to Mr. Sinisterra's penalty phase. I did not interview any relatives of Mr. Sinisterra other than his wife and some of her family. I did not gather any records of his life history or that of his family members, all of which could only be found in his homeland of Colombia. I did not interview anyone who had first-hand knowledge of Mr. Sinisterra's childhood, developmental years, or life in Colombia. I did not interview anyone about his immigration experiences. I did not accompany Ms. Herndon when she made a trip to Colombia.

7.    I was not asked to investigate Mr. Sinisterra's biography or social history. I was not asked to develop mitigation themes or to prepare demonstrative evidence for the penalty phase of Mr. Sinisterra's trial or to assist in drafting the mitigating factors to be considered by the jurors on the verdict sheet. The interviews I conducted relevant to mitigation focused exclusively on Mr. Sinisterra's relationship with his wife, children, and extended family in Houston.

8.    I have reviewed the evidence presented in Mr. Sinisterra's amended 2255 motion concerning his background in Colombia. I did not know of any of the details of his exposure to family violence, sexual violence, or his lack of education, or his exposure to

head trauma. I did not know that when Mr. Sinisterra was five or six years old, he witnessed his father chase Mr. Sinisterra's mother around with a machete during a psychotic episode. I did not know that Mr. Sinisterra's father abandoned his family after that incident and Mr. Sinisterra's mother raised the children alone and would beat him with a leather whip, often causing him to bleed, throughout the time he lived with his family. I did not know that Mr. Sinisterra was gang-raped when he was about seven years old, or that after that incident he ran away from home and lived on the streets for six years. I did not know that when Mr. Sinisterra returned to his family when he was about twelve, his older brother would molest him, and I did not know that Mr. Sinisterra had suffered several head traumas.

I declare, under penalty of perjury, that the foregoing is true and accurate.

Daniel J. Grothaus

Oct 18, 2003
Date