# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1925

_____

German C. Sinisterra,                      *
                                           *
            Appellant,                     *
                                           *    Appeal from the United States
      v.                                   *    District Court for the
                                           *    Western District of Missouri.
United States of America,                  *
                                           *
            Appellee.                      *

_____

Submitted:  December 15, 2009
Filed:  April 1, 2010

_____

Before RILEY,[1] Chief Judge, WOLLMAN, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

German Sinisterra was convicted of murder, drug trafficking, traveling in interstate commerce with the intent to commit a murder for hire, and criminal forfeiture, and was sentenced to death. After his convictions and sentence were affirmed on appeal, United States v. Ortiz, 315 F.3d 873 (8th Cir. 2002), Sinisterra moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Sinisterra argued, among other things, that he had been denied his Sixth Amendment right to

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

effective assistance of counsel during the penalty phase of his trial.  The district court denied the motion without holding an evidentiary hearing, and Sinisterra appeals.  We affirm in part, reverse in part, and remand for an evidentiary hearing.

## I.  Background

Sinisterra worked as a drug courier for Edwin Hinestroza, who ran a cocaine distribution ring in the Kansas City, Missouri, area.  Cocaine shipments came from La Oficina, a drug cartel, in Colombia, South America, via Mexico.  Sinisterra transported cocaine from Houston, Texas, to Kansas City.

Hinestroza lived in Kansas City with Monica Osma, the sister of the murder victim, Julian Colon.  In late 1998, $240,000 of drug proceeds was stolen from the apartment that Hinestroza and Osma shared.  According to Osma, the apartment was robbed and she was injured during the robbery.  Shortly after the alleged robbery, Hinestroza, his associate, and two men claiming to represent La Oficina questioned Osma about the incident.  They did not believe her account and issued a death threat, meaning that La Oficina would not be satisfied unless someone was killed.

Two days after the meeting with Osma, Hinestroza asked Colon and Héberth Andres Borja-Molina to meet him at a hotel, where they were confronted by Hinestroza, Sinisterra, and two other men.  Colon and Borja-Molina went with the men to another house in Kansas City, where they were bound with duct tape and beaten.  The men demanded to know where the missing $240,000 was.  The beatings and demands continued until Borja-Molina overheard Hinestroza order the men to "shoot him [Colon] in the head" and then heard "shoot the other one, too."  Borja-Molina heard the sound of a gunshot and ringing in his ears.  Pretending to be dead, Borja-Molina was placed with Colon's body in the trunk of a vehicle.  The vehicle was driven to a park, where it and the bodies were abandoned.  After he was arrested, Sinisterra admitted that he had shot Colon and that Hinestroza had employed him to

-2-

participate in the beatings and shootings, promising to pay him $1,000 for his participation.

Sinisterra was charged with (1) conspiracy to distribute five or more kilograms of cocaine; (2) aiding and abetting the use of a firearm in relation to a drug-trafficking crime and committing a murder in the perpetration of a drug-trafficking crime; (3) knowingly traveling in interstate commerce with the intent that a murder for hire be committed; and (4) criminal forfeiture. Attorney Fred Duchardt was appointed to represent Sinisterra. He asked Jennifer Herndon to serve as co-counsel. Both Duchardt and Herndon had previously handled capital cases. Duchardt hired Daniel Grothaus, a private investigator, to serve as both the fact investigator and the mitigation specialist. Grothaus was highly regarded as a fact investigator, and Duchardt gave him the dual role to obtain a higher pay rate. Herndon disagreed with the decision to forego hiring a mitigation specialist.

According to his affidavit, Grothaus has been working as a defense investigator in capital cases since 1988. Grothaus spent the majority of his time investigating issues related to the guilt phase of Sinisterra's trial, although he interviewed some of Sinisterra's friends and family members in Houston for mitigation purposes. Those interviews provided information about Sinisterra's relationships and his role as a husband, father, and friend. Grothaus did not investigate Sinisterra's background or social history and did not gather any records of his life history. Herndon, who was in charge of the penalty phase of trial, undertook most of the mitigation investigation herself. Grothaus was not asked to develop mitigation themes, to prepare demonstrative evidence for the penalty phase, or to assist in drafting the mitigating factors to be considered by the jurors.

Defense counsel decided to present mitigation evidence through live witnesses at the penalty phase of trial. Because Sinisterra was born and raised in Buenaventura, Colombia, Herndon traveled to Colombia to meet with Sinisterra's mother, other

-3-

family members, and friends.  According to Herndon, the interviews she conducted were preliminary interviews to get acquainted with the family and friends and to develop rapport; she did not delve into issues of abuse or family discord.  She recorded her interviews, but did not intend to introduce the recordings at trial.  She made no attempt to gather records in Colombia, nor did she ask Sinisterra's family members who lived there to do so.  The potential Colombian witnesses were required to secure visas or humanitarian parole to gain entry into the United States.  According to Duchardt, although all appropriate steps were taken to assist potential witnesses in timely applying for the visas, the applications were denied and thus Sinisterra's relatives were unable to enter this country.

Following the guilt phase of Sinisterra's trial, the jury convicted him of the crimes described above.  During the penalty phase of the trial, Sinisterra introduced ten witnesses in support of mitigation:  his wife, his mother-in-law, his nine-year-old daughter, his daughter's mother, two friends, a former employer, two corrections officers, and a probation officer.  The videotaped interviews, which were redacted and shown to the jury, constituted the only evidence regarding Sinisterra's childhood in Colombia.  No evidence of Sinisterra's mental health or capacity was presented.

During closing arguments, the government asked the jury to send a message to Sinisterra and other drug traffickers like him and to act as the conscience of the community.  The government also told the jurors that the mitigation evidence was a "smoke screen" and compared it to the dark ink an octopus ejects to evade danger.  The prosecutor framed the murder as being cold and premeditated, telling the jury that defense counsel wanted its sympathy but that it would be wrong to base the sentence on how Sinisterra's children felt.  Neither Duchardt nor Herndon objected to the government's closing argument.

The jury returned a death-sentence verdict on the murder and murder-for-hire counts.  It found three statutory aggravating factors:  (1) the murder was committed

with the expectation of pecuniary gain; (2) the murder included substantial planning and premeditation; and (3) Sinisterra intentionally attempted to kill more than one person. The jury also determined that Sinisterra was likely to commit criminal acts of violence in the future and was a continuing threat to society. The jury found no statutory mitigating factors, but found a number of non-statutory mitigating factors, concluding that Sinisterra loved and supported his family and friends.

Following the affirmance of his conviction and sentence, Sinisterra brought the present action, alleging that his counsel were ineffective for failing to investigate and present mitigation evidence and for failing to object to the government's inappropriate remarks during its closing argument. The motion included a section describing Sinisterra's childhood. It stated that Sinisterra's parents were illiterate and that his father may have been mentally retarded. As a child, Sinisterra had witnessed his father chase his mother around the house with a machete. After his father abandoned the family, Sinisterra's mother often beat him with a horsewhip. The motion further asserted that four teenagers gang-raped Sinisterra when he was seven and that he later ran away, living homeless in the streets of Cali, Colombia. Sinisterra also spent time in juvenile correctional facilities. He returned to his family when he was twelve or thirteen, only to be sexually abused by his older brother. Sinisterra never learned to read or write, and he suffered at least two head injuries. The motion noted that two of Sinisterra's three brothers had been murdered, one in 1986 and one in 1994. Herndon and Grothaus submitted affidavits, stating that they were unaware of the information regarding Sinisterra's childhood.

Sinisterra's habeas counsel arranged for Sinisterra to be examined by a Spanish-speaking neuropsychologist, who opined that Sinisterra had a low range of intellectual abilities. The neuropsychologist determined that Sinisterra is probably not mentally retarded, but that he likely suffered brain damage and was at risk for poor judgment and impulsivity. The report included much of the same background information as

the § 2255 motion, attributing the facts to interviews with Sinisterra, his mother, and his sister.

In response to the government's request, the district court directed Duchardt to submit an affidavit regarding Sinisterra's allegations of ineffective assistance of counsel. Duchardt defended his decision to hire Grothaus as the fact investigator and mitigation specialist. He further attested that he "reviewed the details in the amended petition concerning Mr. Sinisterra's background" and acknowledged that he was aware of the information before trial. Duchardt recounted the results of Sinisterra's pre-trial mental health evaluation by a Spanish-speaking psychiatrist and stated that, in light of the psychiatrist's finding that Sinisterra had "no mental problems," he decided to not pursue the matter further. Moreover, after reviewing the neuropsychologist's report appended to Sinisterra's § 2255 motion, Duchardt stated that he likely would not have used that evidence at trial.

Both trial attorneys responded to Sinisterra's claim that their failure to object to the prosecutor's closing argument constituted ineffective assistance. Duchardt explained that he did not object during penalty phase closing argument because it was Herndon's responsibility to do so. Moreover, he did not find the arguments at issue in this appeal to be improper. Herndon explained that she was not aware of the case law prohibiting the prosecutor from asking the jury to "send a message" and that she had no strategic reason for failing to object.

The district court denied Sinisterra's § 2255 motion without holding an evidentiary hearing. The district court concluded that counsel adequately investigated and presented mitigation evidence, including evidence of Sinisterra's mental health and capacity. The district court similarly rejected Sinisterra's argument that defense counsel were ineffective for failing to hire a mitigation specialist who could present forensic testimony at trial. It determined that the prosecutor's closing argument did not constitute an impermissible emotional appeal but rather presented the facts to the

-6-

jury so that it could weigh the aggravating and mitigating factors.  The district court concluded that because the argument was not improper, counsel were not ineffective for failing to object.  The district court denied Sinisterra's request for a certificate of appealability.

We subsequently certified the following issues for review:  (1) whether counsel were ineffective for failing to conduct a thorough mitigation investigation and present available mitigation evidence to the jury; (2) whether counsel were ineffective for failing to investigate and present mental health evidence; (3) whether counsel were ineffective for failing to retain and utilize a qualified mitigation expert; and (4) whether trial and appellate counsel were ineffective for failing to object to prosecutorial misconduct during closing argument.  We answer only the fourth of these issues directly at this stage of the case, concluding that it is necessary to remand the remaining issues for further development in the district court, as outlined in the following discussion.

## II.  Failure To Investigate and Present Mitigation Evidence

Sinisterra contends that the district court abused its discretion in denying an evidentiary hearing on his § 2255 claims that his trial counsel were ineffective for failing to investigate and present mitigation evidence.  A § 2255 movant is entitled to an evidentiary hearing unless "the motion and the files and records of the case conclusively show that [he] is entitled to no relief."  28 U.S.C. § 2255.  "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."  Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) (internal quotations and citation omitted).  Accordingly, to determine whether the district court abused its discretion in denying an evidentiary hearing, we must consider the validity of the movant's claims for relief.  Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008).  We review *de novo* the district court's rejection of the substantive claims.  Id.

To establish his claim of ineffective assistance of counsel, Sinisterra must prove that his attorneys' performance was deficient and that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance is that which falls below the "range of competence demanded of attorneys in criminal cases." Id. at 687 (internal quotations and citation omitted). The standard is an objective one, viewed in light of professional norms prevailing when the representation took place.  Bobby v. Van Hook, 130 S. Ct. 13, 16 (2009) (per curiam); Strickland, 466 U.S. at 686.  We must consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688.  To establish prejudice, Sinisterra must establish a "reasonable probability that a competent attorney, aware of the available mitigating evidence would have introduced it at sentencing, and that had the jury been confronted with this mitigating evidence, there is a reasonable probability that it would have returned with a different sentence."  Wong v. Belmontes, 130 S. Ct. 383, 386 (2009) (per curiam) (quoting Wiggins v. Smith, 539 U.S. 510, 535, 536 (2003)) (internal quotations and alterations omitted).

We conclude that Sinisterra's claim of ineffective assistance of counsel for failing to investigate and present mitigation evidence merits further review. Sinisterra's counsel had an obligation to conduct a thorough background investigation and to exercise reasonable, professional judgment in determining the mitigation evidence to present during the penalty phase of Sinisterra's trial.  Williams v. Taylor, 529 U.S. 362, 396 (2000); Simmons v. Luebbers, 299 F.3d 929, 938-39 (8th Cir. 2002).  Sinisterra argues that counsel failed to meet those obligations, and the record does not affirmatively refute the factual assertions upon which Sinisterra's claim is based.

The record does not conclusively show that Sinisterra's attorneys acted within the range of competence demanded of attorneys in criminal cases.  Sinisterra's § 2255 motion set forth facts pertaining to his life in Colombia, including rape, physical and

-8-

sexual abuse, homelessness, privation, and head injuries.  No testimony or other evidence about these factual allegations was presented at trial.  Herndon and Grothaus stated that they did not know this information about Sinisterra's upbringing, but Duchardt stated that he was "aware of all of this information prior to the start of the trial."  The record thus leaves unanswered a number of questions related to his attorneys' performance, including whether Duchardt exercised reasonable professional judgment in refraining from presenting information of which he had knowledge and whether Herndon's mitigation investigation was constitutionally deficient for failing to discover that information.  Moreover, the district court has not determined whether Sinisterra's factual assertions are credible or whether Sinisterra can present evidence to support them.

The record does not affirmatively refute Sinisterra's claim that he suffered prejudice as a result of the alleged ineffective assistance of counsel.  The factual allegations set forth in the § 2255 motion differ in kind and substance from the evidence contained in the recorded interviews presented at trial.  The district court's order denying relief did not address the allegations, concluding instead that the recordings sufficiently conveyed the evidence of Sinisterra's childhood.[2]  The recorded interviews expressed that Sinisterra was a good worker and a good person, who did not attend school because his family was poor.  His sister explained that there were eight children in the family and that two of Sinisterra's three brothers died violent deaths.  The recorded interviews did not mention the alleged rape, physical and sexual abuse, homelessness, or head injuries.  If deemed credible and supported by evidence, these factual assertions might present "the kind of troubled history [the

---

[2]The order adopted and relied upon the government's erroneous contention that the recordings had an impact on the jury's findings as "demonstrated in the jurors finding as a non-statutory mitigating factor that Sinisterra's 'lack of guidance and support as an adolescent made him an easy target of violent drug culture.'"  D. Ct. Order of Dec. 14, 2007, at 19.  The jury returned that finding in Hinestroza's case, not Sinisterra's, and Hinestroza was sentenced to life imprisonment.

Supreme Court] has declared relevant to assessing a defendant's moral culpability." Wiggins, 539 U.S. at 535 (recounting petitioner's troubled history, which included privation, abuse, physical torment, sexual molestation, rape, homelessness, and diminished capacity). Compare Porter v. McCollum, 130 S. Ct. 447, 454 (2009) (per curiam) (concluding that defendant was prejudiced by counsel's failure to present evidence that might have influenced the jury's appraisal of Porter's moral culpability, including evidence of his heroic military service, his struggles upon his return from war, his childhood history of physical abuse, and his brain abnormality, difficulty reading and writing, and limited schooling), with Belmontes, 130 S. Ct. at 387-88 (concluding that additional evidence of the defendant's background and humanizing features would have offered an insignificant benefit because the sentencing jury was well acquainted with those topics), and Van Hook, 130 S. Ct. at 19-20 (concluding that the defendant failed to show prejudice because the additional relevant evidence provided only minor details). Without a complete record, we cannot determine whether Sinisterra was prejudiced by counsels' alleged failure to investigate and present mitigation evidence. Thus, we conclude that the case must be remanded for an evidentiary hearing.

Also to be developed on remand is whether counsel were ineffective for failing to investigate and present evidence of Sinisterra's mental health and capacity. Standing alone, this claim may not have warranted remand, because Duchardt gave as a reason for his decision to forego pursuing or presenting mental health evidence his determination that no further investigation was necessary after a Spanish-speaking psychiatrist evaluated Sinisterra and reported "no mental problems." This claim of error, however, is interwoven with the overarching claim of failure to investigate and present mitigation evidence. No evidence of Sinisterra's mental health or capacity was presented during the penalty phase of his trial.[3] In light of the fact we are

_____

[3]With respect to Sinisterra's mental capacity, the district court's order relied upon the government's erroneous contention that evidence of Sinisterra's mental

-10-

remanding for an evidentiary hearing, we conclude that Sinisterra should be permitted to inquire into his trial attorneys' investigation of and their decision to forego any penalty-phase presentation of his mental health and capacity.

Sinisterra also claims that counsel were ineffective for failing to hire a mitigation expert.  He relies on the 2003 revised version of the American Bar Association (ABA) Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, which prescribe the appointment of two attorneys, an investigator, and a mitigation specialist.  The Supreme Court recently has reminded us that the ABA guidelines may serve as "'guides' to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place." Van Hook, 130 S. Ct. at 16.  The ABA standards in effect at the time of Sinisterra's trial contemplated that the attorneys would complete the mitigation investigation, hiring a mitigation specialist or other expert to assist in the investigation and presentation of mitigation evidence if necessary.  See ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 4.1, pp. 4-5, and 11.4.1, pp. 13-16 (1989).  At oral argument, Sinisterra's appellate habeas counsel conceded that if the trial attorneys had conducted a proper mitigation investigation, the need for a mitigation specialist would have been obviated.  We agree that the substance of Sinisterra's claim is whether counsel

---

capacity had been presented to the jury.  The order stated that "Dr. Wheelock testified about his finding that Sinisterra had a low IQ during the trial.  The jury had an opportunity to hear this testimony and consider it during the trial and penalty phase." D. Ct. Order of Dec. 14, 2007, at 20.  Dr. Wheelock, however, testified at a pretrial hearing that Sinisterra had a performance scale IQ of 75, and the jury never heard that evidence.  During the guilt phase, Dr. Wheelock had testified that Sinisterra was not fluent in English and that his English-language comprehension level was less than a first-grade level.  The district court sustained the government's objection to Dr. Wheelock's testimony regarding Sinisterra's intelligence, deciding that that testimony "goes to his mental capacity," and advising defense counsel that the evidence would be admitted if the trial proceeded to the penalty phase.

-11-

adequately investigated and presented mitigation evidence, including mental health and capacity evidence, and that an affirmative answer to that question will moot the question whether they should have retained a mitigation specialist.

### III.  Failure To Object to Prosecutor's Closing Argument

Sinisterra contends that his trial counsel were ineffective for failing to object to the prosecutor's improper closing argument and for failing to appeal his sentence based on the prosecutor's misconduct in making the closing argument set forth below. To establish this ineffective assistance claim, Sinisterra must demonstrate that counsels' performance was deficient and that there is a reasonable probability that, but for counsels' failure to object or failure to appeal, the result of the proceeding would have been different.  Middleton v. Roper, 455 F.3d 838, 849 (8th Cir. 2006) (quoting Bucklew v. Luebbers, 436 F.3d 1010, 1021 (8th Cir. 2006)); see also Strickland, 466 U.S. at 687.  In deciding whether counsels' performance fell below the minimum standards of professional competence, we must first determine whether the prosecutor's conduct warranted an objection.

### A.  Prosecutor's Arguments

Sinisterra categorizes two types of improper argument.  He contends that the prosecutor encouraged the jury to disregard the proffered mitigation evidence, precluding the jury from fairly considering the mitigation evidence in violation of the Eighth Amendment.  He further argues that the prosecutor improperly linked Sinisterra to the broader drug problems in the United States, denying him an individualized sentencing determination, in violation of the Eighth Amendment.

-12-

## 1. Remarks Regarding Mitigation Evidence

Sinisterra contends that the prosecutor's closing argument disparaged his mitigation evidence, barring the jury from considering the impact his execution would have on his children. As recounted above, the prosecutor had argued that Sinisterra's mitigation evidence was a smoke screen, similar to an octopus's beclouding the surrounding water, and that it would be wrong to base Sinisterra's sentence on how his children felt. "[S]entencing juries must be able to give meaningful consideration and effect to all mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual, notwithstanding the severity of his crime or his potential to commit similar offenses in the future." Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007). To ensure the reliability of the determination that death was the appropriate punishment, a prosecutor may not argue that such consideration is forbidden. Id. at 259 n.21. "[A]s long as the jurors are not told to ignore or disregard mitigators, a prosecutor may argue, based on the circumstances of the case, that they are entitled to little or no weight." United States v. Johnson, 495 F.3d 951, 978 (8th Cir. 2007).

The prosecutor's closing argument did not direct the jury to disregard the mitigation evidence that Sinisterra's execution would have a negative effect on his children. The prosecutor's smoke screen/octopus argument was just that: the prosecutor's characterization of Sinisterra's evidence. "[I]t is unrealistic to suggest that such empty cliches seriously affected the jury's deliberations." United States v. Procopio, 88 F.3d 21, 32 (1st Cir. 1996) (holding that the prosecutor's closing argument characterizing the defense arguments as "illusions" and "a smoke screen" were "more wind than rain" and did not affect the jury's deliberations). When the prosecutor stated that "[i]t would be wrong to base your verdict on how [Sinisterra's children] feel," he had been comparing aggravating circumstances evidence to mitigation evidence and had framed the murder as "cold, premeditated." Taken in its context, the remark went to the weight of the evidence and did not instruct the jury to

-13-

ignore the evidence of the impact a death sentence would have on Sinisterra's children. Moreover, the remark was made only once, and the district court properly instructed the jury as to how to weigh the evidence. Accordingly, we conclude that the remarks did not have the effect of diverting the jury from its role in weighing Sinisterra's mitigation evidence.

### 2. Conscience of the Community and Related Remarks

Sinisterra's next claim of error relates to the prosecutor's remarks that the jury could act as the conscience of the community and "send a message to all other drug dealers that this community will not tolerate [crimes like Sinisterra's]." The prosecutor introduced these themes during closing argument and expanded on them in rebuttal, stating:

> Ladies and gentlemen, decent people, decent citizens, fear for their lives because of drug traffickers like German Sinisterra. We cannot forget that he was a member of a very efficient but unforgiving cocaine distribution organization and American society is a much different place than it was 50 years ago because of the German Sinisterras of the world.
>
> It is time to turn the tables on drug traffickers like this defendant. Finish the message that you began with your verdict of guilt in this case. Tell this defendant and those like him that murder will not be tolerated especially murder committed to further drug trafficking schemes. There is no worse crime. As you sit there you are not just twelve people. You are . . . the conscience of the community and you have a unique opportunity to make a difference. You have a unique opportunity to send a message. Don't squander that opportunity. Have the courage to do the right thing.
>
> . . .
>
> German Sinisterra believes by his actions that murdering couriers over a drug debt is just part of doing business. Tell him he's wrong and tell

-14-

the other drug traffickers of the world if they come to Kansas City they are going to be dealt with in the most severe way, they are going to receive a sentence of death.

The prosecutor's arguments linking Sinisterra to the broader drug problems of the United States, telling the jury to act as the conscience of the community, and asking the jury to send a message with its verdict were improper. Such arguments impinge upon the jury's duty to make an individualized determination that death is the appropriate punishment for the defendant. Weaver v. Bowersox, 438 F.3d 832, 841 (8th Cir. 2006). Prosecutors may not encumber an individual defendant with the responsibility for the nation's drug problems, in addition to the defendant's personal crimes and misdeeds. United States v. Johnson, 968 F.2d 768, 771 (8th Cir. 1992). Similarly, the prosecution puts too significant a burden on a single defendant when it instructs the jury to act as the conscience of the community and send a message from one case to another. Bowersox, 438 F.3d at 841 (citing Sublett v. Dormire, 217 F.3d 598, 600-01 (8th Cir. 2000), and Johnson, 968 F.2d at 770-71)). The Eighth Amendment "requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." Woodson v. North Carolina, 428 U.S. 280, 304 (1976) (plurality opinion). The prosecutor's arguments had the capacity to divert the jury from its essential role and thus should not have been made.

## B.  Deficient Performance for Failing To Object

We turn then to the question whether counsels' performance was deficient for failing to object. Herndon, who was responsible for making the penalty phase objections, concedes that her failure to object was not a strategy-based decision, but was instead the result of her lack of awareness that such arguments were improper.

-15-

We conclude that our case law was sufficiently developed at the time of Sinisterra's trial to put a reasonably competent attorney on notice that the prosecutor's arguments were improper. In United States v. Lee, 743 F.2d 1240, 1252-53 (8th Cir. 1984), we concluded that the prosecutor's arguments that the jury would send a message to other drug smugglers and its guilty verdicts would have an impact on the drug trade amounted to an improper emotional appeal calculated to persuade the jury on facts other than those before it. We also cautioned against conscience of the community arguments, concluding that any error in the prosecutor's advancement of that argument was cured by defense counsel's contemporaneous objection and the trial court's prompt cautionary instruction. Id. at 1253 n.5. Similarly, in Johnson, we held that the prosecutor appealed to the jury to be the conscience of the community in an improper and inflammatory manner by urging the jury to "stand as a bulwark against the continuation of what Mr. Johnson is doing on the street, putting this poison on the streets." 968 F.2d at 770.

## C.  Lack of Prejudice

Although the prosecutor's send a message/conscience of the community comments went beyond the pale and defense counsel offered no good reason for her failure to object, Sinisterra has not shown that there is a reasonable probability that, but for Herndon's failure to object, the result of the proceeding would have been different. On direct appeal, we concluded that the jury instructions "specifically rebut the defendants' argument that the jury did not understand its role as the decision-maker of the sentence." Ortiz, 315 F.3d at 903. Knowing that it was responsible for imposing punishment, the jury found that Sinisterra committed murder after substantial planning and premeditation and with the expectation of pecuniary gain. The jury also determined that Sinisterra, in concert with others, intentionally attempted to kill more than one person.

-16-

Substantial evidence supported the jury's findings, including Sinisterra's confession that he shot Colon. With the $1,000 payment for his involvement in the beatings and shootings, he planned on spending the evening drinking alcohol. On direct appeal, we concluded that "there was ample evidence that Mr. Sinisterra intentionally attempted to kill multiple persons." Id. at 901. We reviewed the evidence that supported a finding of future dangerousness and determined that the government had established that Sinisterra lacked remorse and acted as an enforcer for Hinestroza. The record showed that Sinisterra used physical force and threats of violence to collect drug debts and enforce discipline. One witness testified that Sinisterra offered to "pop" a guy for $2,000. In light of the evidence against him, Sinisterra has failed to show that, had counsel objected, he would not have received the death sentence.

Having found no prejudice, we conclude that Sinisterra's claim that counsel were ineffective for failing to appeal the prosecutorial misconduct alleged in his § 2255 motion is without merit.

## Conclusion

We affirm the district court's judgment that counsels' failure to object to the prosecutor's closing argument did not deny Sinisterra his Sixth Amendment right to counsel. We reverse the district court's judgment that Sinisterra's remaining ineffective assistance of counsel claims could be decided without an evidentiary hearing. The case is remanded with instructions to hold an evidentiary hearing to determine whether counsel were ineffective for failing to investigate and present mitigation evidence, including evidence of Sinisterra's mental health and capacity. We deny Sinisterra's motion to supplement the record.

_____